U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2016 JAN 15 P 4: 12

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 15-CR-173-02-LM |
| ) | |
| OSCAR ROSARIO ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Emily Gray Rice, the United States Attorney for the District of New Hampshire, and the defendant, Oscar Rosario, and the defendant's attorney, Adam Bernstein, Esquire, enter into the following Plea Agreement:

1. **The Plea and The Offense**.

The defendant agrees to plead guilty to Count One of the Indictment, which charges him with Conspiracy to Possess a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(o).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in paragraph 6 of this agreement.

2. **The Statutes and Elements of the Offense.**

**The Conspiracy Statute**

Title 18, United States Code, Section 924(o) provides, in pertinent part:

A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both;

18 U.S.C. § 924(o) (West 2015).

**Possession of a Firearm in Furtherance of a Crime of Violence**

Title 18, United States Code, Section 924(c) provides, in pertinent part:

Any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, . . . in furtherance of any such crime, possesses a firearm , shall . . . be sentenced to a term of imprisonment of not less than five years.

18 U.S.C. § 924(c)(1)(A).

**Hobbs Act Robbery**

Title 18, United States Code, Section 1951(a) provides that:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

The defendant understands that the conspiracy offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

The elements of this offense are:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to possess a firearm in furtherance of a crime of violence that may be prosecuted in federal court; and

Second, that the defendant willfully joined in that agreement.

Adapted from Pattern Jury Instructions: First Circuit Criminal Cases, Instruction 4.03.

3. **Offense Conduct**.

The defendant stipulates and agrees that if this case proceeded to trial, the government would prove the following facts beyond a reasonable doubt:

During an investigation of a group of drug traffickers operating in Massachusetts and New Hampshire, law enforcement officers obtained court authorization to intercept the wire and electronic communications of several individuals, including Juan Rojas.  While some communications were in English, others communications were in Spanish and were translated into English by individuals who were fluent in both languages.

During the course of the intercepted communications of Rojas, Rojas discussed drug-related matters with multiple individuals, including making arrangements to deliver quantities of cocaine and oxycodone pills to others and to collect the proceeds of drug transactions. During the course of the wiretap, the defendant was intercepted speaking with Rojas.  He also exchanged multiple text messages with Rojas.

On June 29, 2015, a series of text messages were intercepted between Rojas and the defendant.  In the text messages, the defendant complained about the efforts of Rojas to get back a gun that Rojas previously had provided to the defendant, including the following messages in which he indicated his plan to use a firearm to conduct a robbery of a drug trafficker:

ROSARIO: I don't understand why the niggas pressuring you.   I need this shit for tomorrow Man like for real.   I'll bring it back as soon as that gets done.   Just tell him one more day and that's it bro.   I promise you.   The shit isn't going to let off.

ROSARIO: It's some white boys crib we going too.   He's catching the Re up tonight. And Me and my homie going in tomorrow.

ROJAS: Loko but whats good you dont litens he wants that one back an her gonna give

3

> you another one you dont undertand what in saying or what he doesnt want you to use that one respect her word he not new school listen to me

In a follow up call, Rojas explained to the defendant that a third party wanted the gun back but would provide a replacement. During the call, the defendant explained that he lived in New Hampshire.

In a call with Rojas on the following day (July 30, 2015), the defendant explained "I'm gonna go do that tonight, so I need the other one." Later that day, Rojas was observed by surveillance agents traveling to Nashua, New Hampshire, where he met with the defendant. The defendant was observed getting into Rojas' vehicle with an object wrapped in a light-colored cloth.

Later that evening, the defendant sent a series of text messages seeking to get a replacement firearm from Rojas, including "What's good man? I need that" "you want me to get you your paper but now your holding it up fam" and "You grab that?" At approximately 7:25 p.m., Rojas sent an outgoing message that said, "You going right now now to get it hit you up start heading this way and yea i need that asap." The defendant responded with a series of text messages asking for Rojas' address. In one message, he said, "Just let me know man. I can't do shit without it bro." They then spoke by phone several times and Rojas directed the defendant to go to Haverhill, Massachusetts.

Surveillance agents followed the defendant from New Hampshire to Haverhill. The defendant was observed going to Rojas' residence. He entered the residence briefly then was observed opening and closing the trunk before he got back into the vehicle. He was later stopped on I-93 in Massachusetts, where he was arrested for operating a motor vehicle with a suspended license. A subsequent search of the vehicle revealed a handgun and ammunition in

4

the trunk.

During a post-arrest, post-*Miranda* interview, the defendant gave conflicting statements but eventually admitted that there was a gun in the vehicle. He claimed to be traveling from Nashua to Boston and falsely denied stopping anywhere along the way, other than getting gas. He claimed that he had the gun for one day and had obtained it for protection but refused to say where he obtained the gun.

At approximately 8:34 p.m. on July 4, 2015, Rojas received an incoming call from the defendant. During the lengthy call in Spanish, the defendant advised that "I just got bail yesterday." The defendant told Rojas that "the niggas pulled me over with a purpose" and later stated that "it was kind of suspect." He advised Rojas to be "extra careful." Later in the conversation, the defendant told Rojas "the streets are real hot right now." They discussed the circumstances of the stop and whether the firearm was registered. Rojas asked, "But you didn't say anything, don't you?" The defendant responded, "Of course not nigger." At another point, he said, "Nobody even knows I fucked with you like that bro." The defendant indicated that the robbery was still going to go forward, saying "What I was gonna do that shit is still the motion, so at least we are still in good shape."

In a call on July 23, 2015, the defendant told Rojas about an individual who has "a little trap" at his "crib" (a reference to a hidden compartment in a residence). Rojas said "There's gotta be mad shit in there if it's a little trap" and indicated that it was in Manchester, New Hampshire.

In a call on July 31, 2015, the defendant told Rojas, "There's a job right now with the greenery, nigga . . . that we're waiting for homie to be good so we can make that move." Rojas asked, "So you think you're gonna know when he's good?" The defendant said, "Yeah, of

5

course. My man's on that."

4. **Penalties, Special Assessment and Restitution.**

The defendant understands that the penalties for the offense are:

A.  A maximum prison term of twenty (20) years;

B.  A maximum fine of $250,000 (18 U.S.C. § 3571); and

C.  A term of supervised release of not more than three years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. § 3583).

The defendant also understands that he will be required to pay a special assessment of $100 at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5. **Sentencing and Application of the Sentencing Guidelines.**

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.  Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.  Respond to questions from the Court;

C.  Correct any inaccuracies in the pre-sentence report;

D.  Respond to any statements made by him or his counsel to a probation officer or to the Court.

6

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. **Sentencing Stipulations and Agreements**.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the parties agree to the following specific offense characteristics under the advisory Sentencing Guidelines:

1. The defendant's base offense level is 20 pursuant to U.S.S.G. § 2B3.1(a).
2. The defendant should receive a five-level enhancement under U.S.S.G. § 2B3.1(b)(2)(C).

The parties intend the above stipulations to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty plea.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's

adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

   A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

   B.   Challenges the United States' offer of proof at any time after the plea is entered;

   C.   Denies involvement in the offense;

   D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

   E.   Fails to give complete and accurate information about his financial status to the Probation Office;

   F.   Obstructs or attempts to obstruct justice, prior to sentencing;

   G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

   H.   Fails to appear in court as required;

   I.   After signing this Plea Agreement, engages in additional criminal conduct; or

   J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive credit for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B. To be tried by a jury and, at that trial, to the assistance of counsel;

C. To confront and cross-examine witnesses;

D. Not to be compelled to provide testimony that may incriminate him; and

E. To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea**.

The defendant understands and acknowledges that he:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D. Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E. Is completely satisfied with the representation and advice received from his undersigned attorney.

10. **Scope of Agreement**.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. **Collateral Consequences**.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant also

understands that if he is not a citizen of the United States, he may be removed from the United States, denied citizenship, and denied admission to the United States in the future as a consequence of his conviction.

12. **Satisfaction of Federal Criminal Liability; Breach.**

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13. **Waivers.**

A. **Appeal.**

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. All aspects of the sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

11

### B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. All aspects of the sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

### C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

D. **Appeal by the Government**

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal as authorized by law.

14. **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

EMILY GRAY RICE
United States Attorney

Date: 1/15/16

By: _____
John J. Farley
Assistant U.S. Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
John.Farley@usdoj.gov

13

The defendant, Oscar Rosario, certifies that he has read this 14-page Plea Agreement and that he fully understands and accepts its terms.

Date: 1/13/16

_____
Oscar Rosario, Defendant

I have read and explained this 14-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 1/13/16

_____
Adam Bernstein, Esq.
Attorney for Oscar Rosario

RECEIVED
US ATTORNEY'S OFFICE
NEW HAMPSHIRE

2016 JAN 15 PM 12:30